IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MARK ANTHONY JONES, | ) | |
| Plaintiff, | ) | Civil Action No. 7:20cv00647 |
| v. | ) | **MEMORANDUM OPINION** |
| HENRY SZCZUR, | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendant. | ) | |

Plaintiff Mark Anthony Jones brings suit alleging that Defendant Henry Szczur, a Pulaski County Sheriff's Deputy, illegally seized and battered him during an arrest on July 9, 2020. Because Deputy Szczur reasonably believed that there was a warrant for Jones's arrest, he is entitled to immunity from suit. The court will therefore grant his motion for summary judgment.

## I. BACKGROUND

On July 9, 2020, Deputy Szczur responded to a domestic disturbance call at Jones's home. The encounter began and proceeded in a relatively routine fashion. Deputy Szczur approached Jones and his wife on their porch, the Joneses assured him that everything was fine, and Deputy Szczur requested that they each provide identification. (*See* ECF No. 11-1 at 7–10.) When Deputy Szczur ran Jones's driver's license number through the Sheriff's Office central dispatch system, a dispatcher informed him that there was a warrant for Jones's arrest. (*See id.* at 10–11.) Deputy Szczur then asked Jones for his social security number and relayed that number to dispatch. The dispatcher confirmed that Jones's social security number matched that of the Mark Anthony Jones listed on the warrant. (*See id.* at 13–14.) The

dispatcher also provided Deputy Szczur with a physical description of the person named in the warrant, which matched Jones's description. (*Id.*) At this point, Deputy Szczur detained Jones in his patrol vehicle and requested that the dispatcher contact Chesapeake, Virginia—the jurisdiction that had issued the warrant—to confirm the warrant. The dispatcher subsequently contacted Deputy Szczur and informed him that the warrant had been confirmed. (*See id.* at 14–15.) After his final conversation with dispatch, Deputy Szczur transported Jones to the New River Valley Regional Jail. Forty-five minutes after their arrival, Deputy Szczur obtained a copy of the warrant and discovered that the birth date, physical description, and social security number did not match Jones's, despite what the dispatcher had told him earlier. After realizing the error, Deputy Szczur transported Jones back to his home.

Jones subsequently filed suit against Deputy Szczur, alleging that Deputy Szczur illegally seized him in violation of the Fourth Amendment, which Jones alleges also constituted a battery under Virginia law. (*See* ECF No. 1 at 5–6.)[1]

## II. STANDARD OF REVIEW

Under Rule 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. *Celotex*, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[1] Jones does not allege any independent basis for the battery, only the fact of the allegedly illegal arrest.

242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn*, 710 F.3d at 213 (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *McAirlaids, Inc. v. Kimberly-Clark Corp.*, 756 F.3d 307, 310 (4th Cir. 2014) (internal alteration omitted) (quoting *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. The nonmoving party must, however, "set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" *Glynn*, 710 F.3d at 213 (quoting *Anderson*, 477 U.S. at 252). The nonmoving party must show that "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "In other words, to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir.

1990) (citing *Anderson*, 477 U.S. at 248). Even when facts are not in dispute, the court cannot grant summary judgment unless there is "no genuine issue as to the inferences to be drawn from" those facts. *World-Wide Rights Ltd. P'ship v. Combe, Inc.*, 955 F.2d 242, 244 (4th Cir. 1992).

### III. ANALYSIS

In this case, Deputy Szczur argues he is entitled to summary judgment because the doctrine of qualified immunity shields him from suit. It is well-established that qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stanton v. Sims*, 571 U.S. 3, 5–6 (2013) (cleaned up); *Smith v. Gilchrist*, 749 F.3d 302, 307 (4th Cir. 2014); *Lucas v. Shively*, 31 F. Supp. 3d 800, 810 (W.D. Va. 2014). Evaluating a claim of qualified immunity involves a two-part test: (1) do the allegations underlying the claim, if true, substantiate a violation of a federal statutory or constitutional right; and (2) did the actions violate a clearly established right of which a reasonable person would have known? *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017); *Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012). In reviewing a claim of qualified immunity, the district court need not consider the questions in a specific sequence. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If the defendant prevails on either question, the inquiry ends and he is entitled to judgment as a matter of law. *See Clem v. Corbeau*, 284 F.3d 543, 549 (4th Cir. 2002). As the party asserting qualified immunity, Szczur has the burden of proving the defense. *Meyers v. Balt. Cnty.*, 713 F.3d 723, 731 (4th Cir. 2013) (citing *Wilson v. Kittoe*, 337 F.3d 392, 397 (4th Cir. 2003)).

Szczur is clearly protected by qualified immunity in this case. Jones's allegations do not make out any Fourth Amendment violation, much less a violation of a clearly established right. Deputy Szczur undertook reasonable steps to determine whether there was a warrant for Jones's arrest, and the information that the dispatcher provided reasonably led him to believe that there was such a warrant.

At the first stage of the qualified immunity analysis, the Court determines whether the allegations underlying the claim, if true, substantiate a violation of a federal statutory or constitutional right. *Munday*, 848 F.3d at 253. In a Fourth Amendment case where the plaintiff alleges that he was arrested in violation of the Fourth Amendment, this inquiry hinges on whether the arresting officer had probable cause to arrest the plaintiff. *See Dunaway v. New York*, 442 U.S. 200, 208 (1979). Probable cause is a "flexible, common-sense standard" that is determined by a totality-of-the-circumstances approach. *Florida v. Harris*, 568 U.S. 237, 240 (2013) (citing *Illinois v. Gates*, 462 U.S. 213, 239 (1983)). "While probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict." *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998). A reviewing court "should only consider the information the officers had at the time they sought the warrant." *Munday*, 848 F.3d at 253. The court analyzes the facts known to the arresting officers "to determine whether they provide a probability on which reasonable and prudent persons would act," disregarding the subjective beliefs of the officers as to whether they believed the facts established probable cause. *Id.* Importantly, "[n]ot every mix-up in the issuance of an arrest warrant, even though it leads to the arrest of the wrong person with attendant inconvenience and humiliation, automatically constitutes a constitutional violation for which a remedy may be sought under

42 U.S.C. § 1983." *Thompson v. Prince William Cnty.*, 753 F.2d 363, 364 (4th Cir. 1985). The court must differentiate, as a matter of law, between reasonable human errors and misjudgments caused by a lack of diligence or professional care.

Reviewing the evidence in the light most favorable to Jones, Deputy Szczur had information from which a reasonable officer would have concluded that there was probable cause to arrest Jones. After he ran Jones's driver's license number, he was told that there was a warrant for Jones's arrest, but that the individual on the warrant used multiple aliases. Deputy Szczur proceeded to run Jones's social security number to confirm the warrant. Based on the social security number, the dispatcher confirmed that Jones was the man listed on the warrant and provided a physical description of the wanted man that matched Jones's physical appearance. Then, Deputy Szczur requested that the dispatcher contact Chesapeake, Virginia, the jurisdiction that issued the warrant, to confirm that it was issued for Mark Anthony Jones. The dispatcher subsequently informed Deputy Szczur that Chesapeake had confirmed the warrant. Only after receiving oral confirmation that Jones's driver's license number, social security number, and physical appearance were listed on the warrant and further confirming the warrant with the issuing jurisdiction did Deputy Szczur arrest Jones.

A police officer is entitled to rely on a dispatcher's representation that there is a valid warrant for a suspect's arrest. Put another way, a police officer has probable cause to effect an arrest when a dispatcher informs him that a neutral magistrate has already determined that such probable cause exists. This court has previously held that probable cause exists when an officer is informed of an arrest warrant and confirms the identity of the suspect. *See Elder v. Thompson*, No. 4:13-cv00047, 2014 U.S. Dist. LEXIS 55618, at *18-21 (W.D. Va. Apr. 22,

2014). Multiple circuits have reached the same conclusion. *See United States v. Mounts*, 248 F. 3d 712, 715 (7th Cir. 2001); *Young v. City of Little Rock*, 249 F.3d 730 (8th Cir. 2001); *Miller v. City of Nichols Hills Police, Dep't*, 42 F. App'x 212, 216 (10th Cir. 2002). Any other conclusion would only allow execution of arrest warrants when the arresting officer has personally inspected the warrant. There is no such requirement in the law. *See Elder*, 2014 U.S. Dist. LEXIS 55618, at *20.

Plaintiff's argument to the contrary is unavailing. Jones contends that Deputy Szczur should not have been satisfied with confirming Jones's driver's license number, social security number, and physical appearance, but should have conducted further investigation to confirm that Jones was, in fact, the man identified by the warrant. (*See* ECF No. 13 at 6–7.) But officers are "not required to exhaust every potentially exculpatory lead or resolve every doubt about [a suspect's] guilt before probable cause [is] established." *Durham*, 690 F.3d at 190. The Fourth Circuit, in addressing this question, has held that "it simply demands too much to expect police officers, on the basis of slight discrepancies…to abandon obtention or execution of a warrant on someone who, for other strong indications… meets the warrant's description." *Thompson*, 753 F.2d at 365. Here, there were no discrepancies between the information available to Deputy Szczur and the information provided by the dispatcher. Deputy Szczur quadruple checked the warrant before arresting Jones, and at no point did he encounter any indication (aside from Jones's own protests)[2] that the warrant was for someone other than Jones. Holding

---

[2] Deputy Szczur testified that Jones told him that he hadn't been to Chesapeake in "years." (ECF No. 11-1 at 16.) Jones asserts that he told the deputy he had never been to Chesapeake. Because the court must view the facts in the light most favorable to Jones, it assumes that he told Deputy Szczur he had never been to Chesapeake. This does not change the outcome.

that Deputy Szczur was required to do more than this in order to effectuate a lawful arrest would be patently unreasonable and contrary to well-established law.

In briefing and at oral argument, Jones pointed the court to *Thompson v. Prince William Cnty.*, 753 F.2d 363, 364 (4th Cir. 1985), *Durham v. Horner*, 690 F.3d 183, 190 (4th Cir. 2012), and *Lucas v. Shively*, 31 F. Supp. 3d 800 (W.D. Va. 2014) to argue that Deputy Szczur was obligated to undertake certain investigative steps before he could arrest Jones. Those cases, all of which involve probable cause determinations made prior to the issuances of a warrant, do not apply to this case. Based on the information that Jones provided and the information that the dispatcher confirmed for him, Deputy Szczur had every reason to believe that probable cause for Jones's arrest had already been established and he was not obligated to undertake that entire process anew.

Because Deputy Szczur lawfully arrested Jones and used reasonable force in doing so, he also did not batter Jones under Virginia law. *See Mesmer v. Commonwealth*, 67 Va. 976, 985 (1875).

## IV.    CONCLUSION

Deputy Szczur is protected from suit in this case by qualified immunity. It is regrettable that Jones was mistakenly arrested, but the law protects police officers who make reasonable mistakes. Deputy Szczur performed a diligent investigation of the warrant for Jones and was reasonably led to believe that Jones was a wanted man. Summary judgment will therefore be granted to Deputy Szczur on all claims.

**ENTERED** this 25th day of June, 2021.

*/s/ Thomas T. Cullen*
UNITED STATES DISTRICT JUDGE